Kidd *v.* Belden.

## Kidd *vs.* Belden.

The plaintiff manufactured and put into the defendant's steamboat, a boiler, engines and other machinery, under a contract by which he was to be paid a certain specified price, a portion of which was to be secured by a chattel mortgage upon the property, to be executed by the defendant, when the plaintiff had completed his contract. After the engines and boiler were placed, and partially fastened in the boat, but before the work was completed, or ready to be delivered, the defendant clandestinely went off with the boat, to Canada, and on his return refused either to execute the chattel mortgage or to pay for the machinery, or to permit the plaintiff to remove it. In replevin, by the plaintiff, the jury having found that there had been no absolute and unconditional delivery of the machinery to the defendant, nor such an annexation of it to the boat that it could not be removed without injury to the boat, *it was held*, that the plaintiff had not lost his title to the property, but might maintain the action.

Kidd *v.* Belden.

It was also *held*, that in estimating the damages which the plaintiff had sus-
tained, the jury were to be governed by the value of the machinery as estab-
lished by the parties in their contract, so far as it could be applied; and that
the value of the property was to be assessed in the condition in which it was
at the time of the demand.

*Held further*, that the defendant, when called upon to respond for the value of
the machinery, could not be allowed to show, in mitigation of damages, that
the same was not constructed and placed in the boat in a workmanlike man-
ner; that he was concluded by his election to take the work in its unfinished
condition, and must be held to have accepted the job as finished, and to have
waived all objections on account of defects.

Under such circumstances, the presumption is that the defects would not have
existed, had the plaintiff been permitted to finish his work; and the defend-
ant cannot be heard to raise the objection of a non-performance which he has
himself occasioned.

The defendant cannot be allowed to show, for the purpose of reducing the dam-
ages, what the machinery furnished by the plaintiff would be worth, detached
from the boat; nor that such machinery, in the boat, as it was when demand-
ed or placed there, was not worth over a particular sum.

The plaintiff's labor, in putting such machinery into the boat, enters into and
forms part of its value, to be assessed by the jury.

MOTION for a new trial, upon a case. The action was
brought to recover a steam engine and boiler, with the
machinery for operating the same, which the plaintiff contracted
to build for the defendant, and put into a steamboat, to be built
by the defendant, at the city of Rochester. There was, in the
first place, a written contract, by which the plaintiff agreed to
build the engine and other machinery, and complete the same in
the boat by the 15th of April, 1852; and the defendant agreed to
pay the plaintiff therefor, on the completion of the work in the
boat, $2700, as follows: one-third cash, on the completion of the
work in the boat; one-third by approved indorsed paper, at
nine months; and the remaining third by like paper, payable
the first day of July, 1853. This written contract was after-
wards, and after the period for completing the work had elapsed,
altered and modified by parol. By the parol agreement some
change was made in the mode of constructing the machinery,
but the principal alteration was in the time and mode of pay-
ment. The terms of payment were to be as follows: $500 in
cash, $1000 in business paper, on the completion of the work,

Kidd *v.* Belden.

and the residue was to be paid in two years from that time, and to be secured by chattel mortgage upon the machinery.   The machinery was built by the plaintiff according to the modified contract, and was nearly, though not quite, completed and put into the defendant's boat on the 29th of June, 1853 ; and before the machinery was entirely finished, and while the plaintiff was engaged in completing the machinery and placing it in the boat, the defendant, without the knowledge of the plaintiff, and clandestinely, run off the boat to Canada.   The boat returned to Rochester on the 5th July.   The plaintiff then sent his men to the boat to complete the machinery, but the defendant refused to permit them to do so.   The plaintiff then demanded payment and security for the contract price for building the machinery in the mode prescribed by the modified contract.   This the defendant refused, and the plaintiff then demanded the machinery and permission to take it from the boat.   The defendant refused to give up the machinery, and threatened to resist any attempt on the part of the plaintiff to take it.   The plaintiff thereupon brought this action.   In putting in and fitting the machinery to the boat, it was fastened by bolts and screws to the timbers of the boat, but so that it could be easily detached and removed from the boat without injury to it.

The action was tried at the Rochester circuit in January, 1854, before the Hon. T. R. STRONG.   The jury rendered a verdict for the plaintiff, and assessed the value of the property at $3480, and assessed the damages at $381.   The court, on the motion of the defendant's counsel, ordered a stay of judgment, in order to allow the defendant to make a case, with leave to turn the same into a bill of exceptions.   The other material facts will be found in the opinion of the court.

*J. H. Martindale*, for the defendant.   I. The contract between the parties, as well as their acts done in execution of it, show that this case is not one of a mere sale of personal property, but a case in which the plaintiff agreed to furnish, and furnished, material, and built it in, and added it to the vessel belonging to the defendant, by his own labor and that of his

Kidd *v.* Belden.

servants; and the compensation to which, by his contract he was entitled, (if any) was not the mere value of the machinery dissevered from the vessel, but the value of his work and labor in adding and building it into the vessel. (1.) It is an elementary principle of law, that the workman who has conferred some additional value on a chattel, either by the exertion of his own skill alone, or by adding thereto something of his own of value, has a *lien* on the chattel for the remuneration due to him. (2 *R. S.* 493, 494.) (2.) At common law, in order to the creation or preservation of a lien, possession in the bailee was necessary; but the revised statutes have extended the common law right of lien, to the case of articles furnished for certain vessels, although the workmen have *not* possession of the vessel. (*Id.*) (3.) It is insisted that in this case the plaintiff acquired a lien on the defendant's vessel, both for the machinery and his work and services in fitting the machinery into the vessel. (*Woods* v. *Russell,* 5 *B. & A.* 942. 7 *Eng. C. L.* 310.) (4.) This right of lien does not depend on any *election* of the workmen, it results from the nature of the transaction, and the acts of the parties. (5.) From the above considerations it follows, that the plaintiff parted with the general property in the machinery, because the very acts which gave the plaintiff a *lien, ex vi termini,* gave the defendant the general property, since the general property and a lien (which is a special property) cannot reside in the same person at the same time. (*Story on Sales,* § 398, *p.* 414.) (6.) The ordinary rules of law, which apply to the case of a mere sale and delivery of chattels, are totally inapplicable to the facts in this case. To make those rules applicable involves the absurdity of treating the *work and labor* of the plaintiff as a chattel, susceptible of sale and delivery; and this was the erroneous principle upon which this cause was tried by the plaintiff, and submitted to the jury by the court. (7.) The acts of the plaintiff, his work and labor in putting in and attaching the machinery to the vessel, and which gave the plaintiff his lien, constituted the delivery of the machinery to the defendant as general owner. This was a legal consequence,

Kidd *v.* Belden.

and could not be affected by any disclaimer or election of the plaintiff.

II. The principal, perhaps the whole, defense of the defendant depended on the circumstance that the plaintiff had a *lien* on the vessel, and had thereby parted with the general property in the machinery. Certainly he gave proof of facts which tended to show that the plaintiff's interest in the machinery consisted of a *lien* on the vessel, and he had a right, therefore, to insist that the question should be submitted to the jury. The court wholly refused to submit the defense to the jury. The error is the more apparent, because the court did charge that they must find the plaintiff to be the *general owner* of the property. How could they comprehend the sense of the charge; what could they understand the court to mean by the terms "general owner," while declining "to charge any thing in respect to a lien?" It was not the less erroneous for the court to withhold a charge on this subject of lien because "there was nothing of the kind in the case upon which the plaintiff relied to recover." That was not the reason why the defendant solicited the charge; he wanted it to *prevent* the plaintiff from recovering. The court erred in refusing to charge as requested, on the subject of a lien.

III. The court charged the jury, that if the machinery was so annexed to the boat that it could not be removed without serious and substantial injury to the boat, the plaintiff could not recover; but he declined to put the proposition in any different form; he declined to charge that *injury* to the vessel by the removal would defeat the plaintiff's action; it must be a *serious and substantial* injury to the boat. The court erred in this part of the charge. (1.) It was error to make the fact of injury to the boat, by the removal of the machinery, the test of the defendant's title. The point of injury ought not to have been presented at all. The case has no analogy to the case of fixtures to real property; and even if it had, the analogy would not help the plaintiff, because there are many things which pertain as fixtures to the realty, and which may be taken up and removed without injury to the soil; for example, hop poles, or

Kidd *v*. Belden.

a rail fence, and out buildings, &c. (2.) The real question was one of *intention*, and not of injury ; that is, whether the machinery was put into the vessel so as to constitute, and with the intention that it should constitute, a part of the building, fitting, furnishing or equipping of the vessel itself; and if it did, *that*, and not serious and substantial injury in the removal, would make the defendant the general owner, and the plaintiff only a special property man. In the case of fixtures to real property, could it be said that any chattel which had been fastened into the soil, with the intention that it should constitute, and so that it did constitute, a part of the real property, might nevertheless remain a chattel, if it could be removed without serious and substantial injury to the soil, and that too when the question arises between vendor and vendee ? ( *Woods* v. *Russell, supra.*) (3.) The revised statutes, in defining the kind of articles for which recovery may be enforced against the vessel itself, have given a legislative interpretation of the *acts*, which show an intention to make a chattel appurtenant to the vessel. (2 *R. S.* 493, 494.) (4.) But the charge was exceptionable in defining the degree of injury as " serious and substantial," which would determine the question of title. The qualifying words were used, and were intended to be used, as having an ascertained and legal signification, which would distinguish the injury effectual to give the defendant title to the machinery, from that which would not. In this sense it was error to use them, because they do not have any such practical legal signification. (5.) If the court shall think otherwise, still the court erred in submitting the question to the jury, because the evidence was uncontradicted and conclusive, that the removal of the machinery could not be accomplished without serious and substantial injury to the boat.

IV. The court erred in instructing the jury that they might find for the plaintiff as to any part of the machinery which might be removed without serious and substantial injury to the vessel, although portions of it could not be so removed. This part of the case presents a strong illustration of the erroneous principle on which the charge proceeded, to wit, that " injury to the boat," and not the intentions and acts of the parties, was

the test of the defendant's title to the machinery. Besides, this portion of the charge defeated the intention of both parties, and is important, therefore, as illustrating the error of the court in adopting the principle above stated, because the plaintiff never intended to sell, and the defendant never intended to buy, a part of the machinery and not the whole. · It is to be noted, however, that the jury found for the plaintiff as to *the whole* of the property, and not as to part of it only.

V. The court ruled that in assessing the value of the property, the prices to be paid for manufacturing it and putting it into the vessel as specified in the contract, so far as they could be applied, should be followed by the jury; that is, they were to include, in the assessment of the value of the machinery, the cost and value of the labor of building it into the boat. The court erred in this part of the case; and this was a most material error, because the boat, having been burned, the action had become not one for personal property, but for its value. The parties had not agreed on any price for the machinery itself. The contract provided for a gross sum to be paid to the plaintiff, as the consideration not only for the machinery, but for the labor of building it into the boat, and for having it completed by the 15th of April, and for the credit which, by the contract, the defendant was to receive. It follows that, by the ruling of the court, the plaintiff has been permitted to treat as personal chattels and to assess the value of the work and labor of his men; his agreement to do his work by the 15th of April, and the credit the defendant was to receive. He has in fact been replevying the work and labor of his men; not that which has been expended in and become incorporated with the chattel itself, but the very work and labor which must be *undone* in order that the plaintiff may reclaim his property. The contract price had nothing to do with the case, because, 1st, the value of the machinery was not separately defined in the· contract, and 2d, the plaintiff did not seek to recover on his contract, but on the ground that the defendant had refused to receive the property on the contract, because he would not comply with the precedent condition of payment. The refusal to allow the de-

Kidd *v.* Belden.

fendant to show the real value of the property was erroneous ; not only for the reasons above stated, but because that was the only mode of determining the value, since some portions of the machinery named in the contract had never been furnished. The court, in the charge, instructed the jury "that the value of the property, in the condition it was at the time of the demand, was to be assessed by them." But the court would not allow the defendant to prove what it was worth.

VI. The court erroneously instructed the jury that it was not material that the plaintiff had not performed his contract in time. He rejected proof that the alterations proved were not the consequence of a new contract, but of the plaintiff's mistakes. The court erred in this part of the case, because the plaintiff, having failed to perform his contract, thereby lost his lien on the vessel for his work and material. *A fortiori*, he lost his property in the machinery as distinguished from the vessel. (*Hodgdon* v. *Waldron,* 9 *N. H. R.* 66.) If it were not so, the plaintiff might have detained the defendant's boat indefinitely with impunity, although the value of the machinery should bear a very small proportion to the value of the hull of the boat.

VII. The confusion of legal principles in this case has led to the following absurd consequences. The plaintiff in the action for personal property, where the recovery of the property is the main object, has been permitted to recover by an arbitrary rule, not its intrinsic value, but a price which the defendant had contracted to pay for machinery built in a workmanlike manner, for the labor of putting it in the boat, for the agreement to have it completed by the 15th of April, and for the credit which the contract secured to him, although, (1.) The machinery was not constructed or put into the boat in a workmanlike manner. (2.) The construction of the machinery was protracted until the 1st of July instead of the 12th of April. (3.) The defendant has not had the benefit of the credit which, by the contract, it was agreed he should have. This is against justice, because if the action had been directly on the contract, or for the materials furnished and work and labor performed by the plaintiff, the damages of the defendant would have reduced the

plaintiff's recovery to what he ought to receive. (4.) Although the. plaintiff has. broken his contract in every particular, and although the property was not intrinsically worth $1500, the plaintiff had secured to him the same compensation as though he had performed the contract in every particular, and the property has been in fact assessed at more than twice its value.

*S. Mathews*, for the plaintiff. I. The general property in the machinery constructed by the plaintiff, and put into the defendant's boat, remained in the plaintiff until it was fully completed and delivered to the defendant and accepted by him. (*Andrews* v. *Durant*, 1 *Kern.* 35.)

II. The plaintiff had done nothing up to the time of the commencement of this action to transfer the property to the defendant or otherwise divest himself of his title. (1.) The machinery had not been completed by the plaintiff. The testimony in the case shows that there were some parts of the machinery which remained unfinished at the time the defendant run off the boat. (2.) There was no delivery. The contract was for building and completing in the defendant's boat the machinery in question, and for the payment by the defendant, of the contract price, in the manner specified in the contract, on the completion of the machinery in the boat. The circumstances of the case show clearly that the plaintiff did not intend to part with his property without payment or security. The terms of the contract show this. They show that the plaintiff did not intend to trust at all to the personal responsibility of the defendant. The putting on the defendant's boat of parts. of the machinery was not, therefore, a delivery to the defendant, with any intention to part with the property. It was simply an act in performance of the contract to build and complete the machinery. And so far as it put the defendant in possession of the machinery, it was a conditional delivery, to become absolute only on the payment of the price. (*Palmer* v. *Hand*, 13 *John.* 434. *Smith* v. *Lynes*, 1 *Selden*, 41. *Russell* v. *Minor*, 22 *Wend.* 659. *Whitwell* v. *Vincent*, 4 *Pick.* 449. *Andrews* v. *Dieterich*, 14 *Wend* 31.) (3.) There was no waiver of the condition. The

plaintiff could not demand payment nor security until the machinery was complete in the boat. The contract, as well the original as the modified contract, contemplated that the payment and security were to be made and given simultaneously with the delivery. The plaintiff required the payment to be made and the security to be given the first moment he was entitled to call for them. There is nothing, therefore, in the case, from which a waiver can be inferred. (2 *Kent's Com.* 496, 497. 13 *John.* 434. 14 *Wend.* 31. 8 *Id.* 256.) (4:) The possession, by the defendant, of the machinery in question, is no evidence of a delivery; for it was obtained by a fraudulent contrivance. (2 *Kent's Com.* 496. 8 *Wend.* 256.)

III. The title to the machinery in question did not pass to the defendant by reason of its having been put into, and attached to, the defendant's boat. (1.) The jury have found that the machinery in question could be detached and separated from the boat without doing any substantial injury to the boat. (2.) It being established by the finding of the jury that the machinery could be separated without injury to the boat, then, if the title had not passed to the defendant by delivery, but remained in the plaintiff, it would not in such a case, if annexed to real estate, become part of it, so as to deprive the owner of his title to it as personal property; much less would the owner lose his title when the annexation, as in this case, was to other personal property. (*Godard* v. *Gould, in Sup. Co.* 7*th Dist.* *Gale* v. *Ward,* 14 *Mass.* 352. *Walker* v. *Sherman,* 20 *Wend.* 636.)

IV. The judge at the circuit was right in holding that the value of the property was fixed by the contract of the parties. The defendant is estopped from going into any inquiry touching the value of the property. He elected to retain it when demanded by the plaintiff and against his will. He ought not, now, to be permitted to say that it was not worth what he agreed to pay for it. There was a waiver by the defendant of any defects in the machinery, when the demand was made by the plaintiff, on the 5th July. The defendant declared his willingness to accept the machinery as it was. The evidence on this

point stood uncontradicted on the trial.   It was the duty of the defendant to speak out then, if he intended to make any claim for defects in the machinery.   Again ; the defendant wrong-fully and fraudulently obtained° possession of the machinery, and refused to allow the plaintiff to finish it or supply any de-fects that might have been discovered.   He ought not, after this, to be permitted to allege defects.

V.   If we are right in the last point, then all the testimony offered by the defendant to show that the contract for building the machinery was not strictly performed, was immaterial, whether the non-performance relate to the time or the manner of completing the work.   And the charge of the judge on this point was also correct.

VI.   The judge properly instructed the jury that the $200 paid by Belden might be applied by them to any machinery which became so attached to the boat as to be incapable of re-moval without injury to the boat.   To that part of the machine-ry, under the ruling of the court, the defendant acquired title ; and it was right, and according to the settled rules of law relating to the application of payments, that the $200 should be so applied.

VII.   The several requests by the defendant's counsel to the court, to instruct the jury as indicated in such requests, were properly refused.

*Martindale,* in reply, cited *Story on Bailment,* § 426 *a ; 2 Kent's Com.* 590, 361, 5*th ed. ; 6 Pick.* 209 ; 12 *Id.* 82 ; 15 *Mass. R.* 242 ; 4 *Iredell,* 102 ; 32 *Maine R.* 404 ; 7 *John.* 475 ; 10 *Id.* 287 ; 2 *Denio,* 628 ; 3 *Burr.* 1592.

*By the Court,* JOHNSON, P. J.   This is a very peculiar case. All the questions of any moment, with one or two exceptions, arise upon the charge of the judge, and his refusal to charge as requested.   The action was replevin, and of course it was necessary for the plaintiff to make out title to the property, to enable him to recover.   The plaintiff was the manufacturer of the boiler, engines and other things for the recovery of which

Kidd *v*. Belden.

the action was brought, and put them into the defendant's boat upon a contract by which he was to be paid a certain specified price, a portion of which was to be secured to the plaintiff by a chattel mortgage upon the property thus furnished, to be executed by the defendant when the plaintiff had completed his contract. After the engines and boiler were placed and partially fastened in the boat, and while the plaintiff was prosecuting, but before he had finished his work and was ready to deliver it to the defendant as finished, the latter clandestinely went off with the boat to Canada, and on his return refused, either to execute the chattel mortgage, or to permit the plaintiff to remove the engines and other things thus furnished, or to pay for them. The judge charged the jury that under such circumstances the plaintiff had not lost his title, unless they should find, from the evidence, that the plaintiff had intended to deliver the machinery absolutely and unconditionally to the defendant, trusting to his personal responsibility for payment and security ; or unless the machinery had been so annexed to the boat that it could not be removed without serious and substantial injury to the boat. The jury found both facts in favor of the plaintiff. This portion of the charge was, I think, clearly correct. The defendant's counsel insists that as the machinery was put into the boat as an essential and substantial part of it, without which it could not be what the parties intended to make it, a steamboat, the engines and boiler, when placed and fastened there, necessarily and inevitably became a part and parcel of the boat, and the plaintiff's interest attached by way of lien on the vessel. It is undoubtedly true that the plaintiff might have had a lien upon the vessel, had he elected to waive his rights under his agreement, and look only to the rights which the statute gives independent of any stipulation. But it is equally certain that the parties could control this by agreement. And the evidence shows clearly that they undertook to do so, and stipulated that the plaintiff should have a chattel mortgage upon the engines and boiler for his security. This would vest the legal title in him. There was nothing to prevent this, as the jury have found that they were not so annexed to

the boat but that they could be removed without essential injury to it. There is certainly no legal impossibility in the title to the engines and boiler being in one person, and the hull of the boat in another. It is clear that the failure of the plaintiff to complete his job by the time specified, affords no justification to the defendant for taking the property before it was delivered or ready for delivery, nor for refusing to deliver it when demanded. The plaintiff had lost his title neither by delivery unconditionally, nor by annexation, and his right to maintain the action is clear.

The most important and difficult question in the case arises upon that portion of the charge, fixing the rule of damages. The property was not delivered to the plaintiff upon the process, but was retained by the defendant, in the boat. The judge charged the jury that in estimating the damages they were to be governed by the value established by the parties in their contract, as far as it could be applied. And that the value of the property which was found to be the plaintiff's was to be assessed in the condition in which it was at the time of the demand.

In the course of the trial the judge ruled that the defendant might show that the machinery was not such as was contracted for. That is, as I understand the ruling, not of the same kind or character. But that he could not show that the machinery was not constructed and placed in the boat in a workmanlike manner. To this ruling there was an exception, and it is important to consider this in connection with the rule of damages as established on the trial and excepted to in the charge. It appears clearly, from the evidence, that the defendant prevented the completion of the work by going off with the boat secretly and without the plaintiff's knowledge or consent, before the job was pretended to be finished. That when the defendant returned with the boat a few days after, the plaintiff requested permission to go on and finish the job, which the defendant refused to grant. That some portions of it were found to be somewhat defective, and that the plaintiff expected to alter such portions, and finish them properly before he got through, and

Kidd *v.* Belden.

would have done so, but for the removal of the boat by the defendant. Under such circumstances, ought the defendant to be allowed to set up such defects in mitigation of damages, when called upon to respond for the value of the property? Clearly not. He is concluded by his election to take the work in that condition, and must be held to have accepted the job as finished, and to have waived all such defects. He cannot be heard to allege the non-performance which he occasioned. The presumption is that such defects would not have existed, had the plaintiff been permitted to finish his work. In an action between the same parties, brought by the defendant against the plaintiff, to recover damages for the defective character of the work, in its construction and adjustment and fastening in the boat, I held the same way, both at the circuit and subsequently at the special term, on motion for a new trial. I am satisfied, upon the most mature consideration, that this ruling was correct, upon the plainest principles of justice

The defendant, on the trial, by way of reducing damages, offered to show what the machinery furnished by the plaintiff would be worth detached from the boat, and that, detached from the boat, it was not worth over $1000. He also offered to show that the machinery in the boat, as it was when demanded or placed there, was not worth over $1500. Both offers were overruled. The judge also ruled that the plaintiff's labor in putting the machinery into the boat, entered into and formed part of its value to be assessed by the jury. All these rulings are in accordance with the rule of damages laid down in the charge to the jury. And if the measure of damages established is the true one in cases of this kind, these rulings are all correct. Was the contract price, therefore, the true measure of damages for this case, so far as it could be applied? Ordinarily in actions of this kind, the value of the property which is the subject of the action, and the damages for its detention, are the only damages to be recovered, and these are to be determined from the evidence on the trial. This was a clear departure from the established rule in such actions, and it is to be seen whether the ruling can stand upon any known legal principle. It is cer-

tain, I think, looking at the situation of the parties, and the property, and all the surrounding circumstances, that it is a proper case for an exception to the general rule, if one can be found which will render an exception proper. In the first place, the machinery was not such as is ordinarily used in steamboats, but was necessarily somewhat peculiar in its structure as well as in its adjustment, in order to adapt it to the defendant's boat. It would not readily answer for other steamboats ; and if separated from this boat, it would become greatly lessened in value, and as an article for the general purposes of sale by a manufacturer would be comparatively worthless. It was made of this form and general character, for the defendant, at his request, and upon an agreement with him, and placed in his boat upon his agreement to pay a specified sum for it. The defendant upon his agreement not only to pay this sum, but to secure the payment of a portion of it by a chattel mortgage upon the whole, which would vest in the plaintiff the legal title, induces the plaintiff to construct this machinery thus valueless for ordinary purposes, and on the faith that the defendant will perform on his part. And in pursuance of his agreement the plaintiff puts the property thus manufactured, upon the defendant's boat, thus placing the latter in a situation to seize and control it in defiance of the plaintiff and his rights, and in violation of his own promise, which had brought the property into this situation. The defendant thus situated, takes the property before it is delivered, and before it is entirely ready for delivery, and controls it, refuses to let the plaintiff finish it, refuses to make payment and to give the mortgage, and refuses to give it up to the plaintiff on his demand. The plaintiff is therefore, by these wrongful acts of the defendant, driven to the necessity of bringing his action upon the contract, thus trusting wholly to the personal solvency or pecuniary responsibility of the defendant which he was not to do by his contract, or to pursue the property and obtain compensation from that. Having elected to pursue the property, is the plaintiff to be placed in a worse condition than he would have been had the defendant fulfilled his promise ? In other words, is the

Kidd *v.* Belden.

defendant, who has thus procured another to place property within his reach, to be permitted to appropriate it wrongfully, and by means of his own wrong obtain it for a less sum than he agreed to pay ? I think not; and I confess I can see no other measure of damages which would so effectually mete out full justice to the parties. The defendant should be estopped from saying that it was not worth what he agreed to pay for it, under the circumstances ; and I do not perceive why the principle of estoppel does not apply with full force to the case. It may well be that the defendant could have proved that the machinery in the boat was worth much less than he agreed to pay ; and this might have arisen in part from some defects in some of its parts, and in part from the partial failure of the experiment of using such machinery for such purposes. But the plaintiff was not to be held responsible in a case like this, for a diminution in value from such causes. The defendant availed himself of the plaintiff's labor in placing the machinery in his boat. The labor added to the value of it, to the defendant, when it was so placed ; and there is no reason why this labor should not be regarded as part of the value of the machinery to be assessed against the defendant. It was as necessary and as valuable as the labor bestowed in the manufacture. It was bestowed by the plaintiff in performance of his contract. It rendered the machinery efficient, and thus entered into and became essentially a part of it, to the defendant, and it was this value added to the machinery which has been recovered in this action, and not the value of work and labor, as such. There is no pretense that the machinery was not of the kind contracted for. I have not been able to find any reported case in its main features analogous to this, and none was cited upon the argument. Upon the point, however, of assessing the value of the machinery as it was when affixed to the boat, the case of *Thompson* v. *Pettitt,* (10 *Adol. & Ell. N. S.* 101,) may be regarded as an authority. In that case certain fixtures had been assigned by a tenant by way of security, which were valued at £80, and were worth that sum as attached to the house and to be sold with the lease or to the next tenant. Subsequently the tenant went into bankruptcy,

---
Kidd *v.* Belden.
---

and his assignee in bankruptcy severed the fixtures from the house and sold them for £30, which was a fair price, in the severed state. In trespass for the fixtures, brought by the first assignee, the court held that the plaintiff was entitled to recover the £80, and that the defendant could not take advantage of his own proceeding in separating the fixtures, to reduce the value. The judge also instructed the jury to exclude such portions of the machinery as were not put in by the plaintiff, and to allow the defendant what he had paid. But that if any portion of the materials furnished by the plaintiff, had been so annexed that the plaintiff had thereby lost his title, they might apply the payment made to such portions. In this there was no error against the defendant. The effect of it was to give the plaintiff title to all the machinery which could be removed, and to give the defendant title to such portion of the materials as had become so attached that they could not be removed, and to give to him the benefit of all payments he had made over and above the value of such parts as had become his. This was certainly as favorable to the defendant as he could reasonably ask; and if there was any error in the ruling on that score it was one of which he cannot complain.

On the whole, I am of opinion that no rule of law has been violated either in the charge to the jury or in the refusal to charge as requested, or in the decisions in the course of the trial; and that a new trial should be denied.

New trial denied.

[MONROE GENERAL TERM, March 5, 1855. *Johnson, Welles* and *T. R. Strong,* Justices.]